# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KIMBERLY S. BRUGGEMAN,**

    **Plaintiff,**

    v.                                                    Case No. 18-CV-1509

**ANDREW M. SAUL,**
**Commissioner of Social Security,**

    **Defendant.**

## DECISION AND ORDER

Kimberly S. Bruggeman seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed.

## BACKGROUND

Bruggeman filed an application for a period of disability and disability insurance benefits alleging disability beginning on August 29, 2014 due to bulging discs, scoliosis, degenerative joint disease, right knee condition, "both feet condition," kidney disease, and depression. (Tr. 239.) Bruggeman's application was denied initially and upon reconsideration. (Tr. 17.) Bruggeman filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on April 17, 2017. (Tr. 37–82.) Bruggeman testified at the hearing, as did Dr. Matthew Sprong, a vocational expert. (Tr. 37.)

In a written decision issued August 2, 2017, the ALJ found that Bruggeman had the severe impairments of obesity, degenerative disc disease of the lumbar spine, and degenerative

joint disease of the right knee. (Tr. 20.) The ALJ considered Bruggeman's impairments under Listing 1.02–Major dysfunction of a joint(s) and Listing 1.04–Disorders of the spine but found that she did not meet or medically equal either listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 21.) The ALJ further found that Bruggeman's obesity did not meet or equal the criteria for any listed impairments. (*Id.*) The ALJ found that Bruggeman had the residual functional capacity ("RFC") to perform a reduced range of sedentary work. (*Id.*) Specifically, she was precluded from climbing ladders, ropes, or scaffolds and kneeling or crawling. (*Id.*) The ALJ limited Bruggeman to occasionally climbing ramps and stairs, stooping, and crouching. (*Id.*) Finally, the ALJ limited her to jobs that can be performed while using a hand held assistive device only for uneven terrain or prolonged ambulation and the contralateral upper extremity can be used to lift and carry up to exertional limits. (*Id.*)

The ALJ found Bruggeman capable of performing her past relevant work as a day care center director. (Tr. 29.) The ALJ alternatively found that given Bruggeman's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 30.) As such, the ALJ found that Bruggeman was not disabled from her alleged onset date until the date of the decision. (Tr. 31.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Bruggeman's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Bruggeman argues that the ALJ made the following errors requiring remand: (1) failing to adequately account for Bruggeman's non-severe impairment of depression in the RFC; (2) failing to adequately consider Listing 1.02A; (3) failing to give appropriate weight to the opinion of her treating rheumatologist, Dr. Peter Szachnowski; and (4) failing to adequately support his RFC finding of sedentary work. I will address each argument in turn.

#### 2.1 Failing to Consider Non-Severe Impairments in RFC

Bruggeman argues that the ALJ erred in failing to consider her non-severe impairments of depression and/or anxiety in the RFC. The ALJ considered her medically

3

determinable impairments of depression and anxiety both singly and in combination and determined that the impairments did not cause more than a minimal limitation in Bruggeman's ability to perform basic mental work activities. (Tr. 20.) In making this determination, the ALJ determined that Bruggeman had no limitations in understanding, remembering, or applying information; in interacting with others; and in adapting or managing herself. (Tr. 20–21.) He found that she had mild limitations in concentration, persistence, or pace. (Tr. 20.)

It is true that when determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered "severe." *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). However, it is still the claimant's burden to show that she cannot perform her past relevant work due to her limitations. *See Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Bruggeman does not assert that her non-severe impairments actually limit her ability to perform her past relevant work. Rather, she argues that because her past work as a daycare center director was skilled, "[e]ven a non-severe mental impairment *may* merit a reduction in the ability to perform such highly skilled work." (Pl.'s Br. at 13, Docket # 15) (emphasis added). Despite the Commissioner arguing that Bruggeman failed to articulate how her non-severe impairments limited her (Def.'s Resp. Br. at 12, Docket # 20), Bruggeman responded with more speculation—"even a mild impairment . . . *may well have* precluded this work . . . Therefore, the ALJ *could be overstating* the residual functional capacity." (Pl.'s Reply Br. at 10–11, Docket # 23) (emphasis added). This is insufficient for Bruggeman to meet her burden. Because Bruggeman cannot articulate how her non-severe impairments preclude her ability to perform her past relevant work, she has not shown that the ALJ erred in his consideration of her non-severe impairments.

2.2     Failure to Properly Consider Listing 1.02A

Bruggeman argues that the ALJ failed to properly consider Listing 1.02A. Bruggeman also argues that the ALJ failed to properly consider the interplay of her obesity with the listing. (Pl.'s Br. at 15–16.) Listing 1.02 states as follows, in relevant part:

> **1.02 Major dysfunction of a joint(s) (due to any cause)**: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

As to Listing 1.02, the ALJ's analysis consists of the following: "The record shows that she is able to use both her right and left upper extremities effectively and is able to ambulate effectively." (Tr. 21.) Bruggeman acknowledges that Listing 1.02 requires a claimant to show not only the requirement of Listing 1.02A, but the requirements found in the introductory paragraph of Listing 1.02. Bruggeman argues, however, that because the ALJ focused on the requirement that she needed to ambulate effectively in Listing 1.02A, the ALJ somehow conceded that she met the other requirements of the listing. (Pl.'s Reply Br. at 5.) I disagree. To establish that an impairment or combination of impairments meets or is equivalent to a listed impairment, a plaintiff must present medical findings that meet or are equal in severity to *all* of the criteria in a listing. *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990) (citing SSR 83–19 and 20 C.F.R. § 416.926(a)). Because a claimant must meet all of the criteria to meet the listing, an ALJ may reasonably focus on a single criteria that is more easily disposed of. This does not mean, however, that the ALJ concedes that all other criteria are met.

Further, it is the plaintiff's burden to show that her impairments meet or medically equal a listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Even though an ALJ "should provide a [listings] analysis," a claimant "first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (internal citations omitted). While Bruggeman challenges the ALJ's finding regarding her ability to ambulate effectively, she fails to demonstrate that she meets the criteria found in the introductory paragraph of Listing 1.02. Thus, the ALJ did not err in his assessment of Listing 1.02. Bruggeman further argues that the ALJ failed to provide any rationale supporting evaluation of her obesity. (Pl.'s Br. at 16.) This is simply inaccurate. The ALJ specifically analyzed the effects of her obesity on Listing 1.02. (Tr. 21.) Bruggeman has not shown that the ALJ erred in his analysis of the listings.

    2.3    Weight Given to Treating Rheumatologist's Opinion

Bruggeman argues the ALJ erred in assigning only some weight to the opinion of her treating rheumatologist, Dr. Szachnowski. An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. § 404.1527(c)(2).[1] If the opinion of a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record," the opinion must be given "controlling weight." *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, she may not simply reject it. Social Security Ruling ("SSR") 96-2p. Rather, if the ALJ finds that a treating source opinion does not meet the standard for

---

[1] On January 18, 2017, the SSA published the final rules entitled "Revisions to Rules Regarding the Evaluation of Medical Evidence" in the Federal Register (82 Fed. Reg. 5844). The final rules became effective on March 27, 2017. For claims (like the one at issue here) filed before March 27, 2017, the SSA continues to apply the rules that were in effect at the time of the ALJ's decision. *See* 20 C.F.R. § 404.1527.

controlling weight, she must evaluate the opinion's weight by considering a variety of factors, including the length, nature, and extent of the claimant and the source's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the source is a specialist. *See* 20 C.F.R. § 404.1527(c).

The ALJ must always give "good reasons" for the weight given to a treating physician's opinion. § 404.1527(c)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. "An ALJ can reject [a treating source's] opinion only for reasons supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)).

Bruggeman treated with Dr. Szachnowski throughout the relevant time period. On September 8, 2015, Dr. Szachnowski opined that Bruggeman could sit for forty-five minutes at a time and could stand for ten minutes at a time. (Tr. 497–98.) He further opined that Bruggeman could sit and stand/walk for less than two hours in an eight-hour work day. (Tr. 498.) Dr. Szachnowski opined that Bruggeman would need to shift positions at will from sitting, standing, or walking and should use an assistive device when walking or standing. (*Id.*) Finally, Dr. Szachnowski opined that Bruggeman would miss work more than three times a month because of her impairments or treatment. (Tr. 499.) In other words, Dr. Szachnowski opined that Bruggeman could not perform sedentary work.

The ALJ accorded Dr. Szachnowski's opinion "some weight." (Tr. 28.) In so doing, the ALJ noted that Dr. Szachnowski is a specialist and a treating source whose records

consistently noted back pain and right knee pain due to degenerative arthritis exacerbated by Bruggeman's weight and mechanical factors. (*Id.*) The ALJ explained that these conditions, with the further limitations cited, would reasonably limit Bruggeman to a sedentary RFC. (*Id.*) The ALJ further credited Dr. Szachnowski's opinion that Bruggeman needed to use an assistive device and included such limitation in the RFC. (*Id.* at 28–29.) The ALJ did not credit, however, Dr. Szachnowski's opinion regarding her need to frequently move around and lie down throughout the workday, finding that the limitations were not borne out by the objective medical record, including Dr. Szachnowski's own treatment records. (Tr. 28.)

Bruggeman argues that the ALJ "cherry-picked" the record and failed to assess the opinion pursuant to the regulatory factors. (Pl.'s Br. at 20–21.) This is unsupported. The ALJ meticulously recounted Bruggeman's medical history—both the evidence supporting disability and the evidence contradicting disability—in determining her RFC. (Tr. 24–27.) In fact, Bruggeman herself notes that while she would "normally . . . outline the evidence in her favor, evidence supporting her statements[,] and subjective pain, frankly, Bruggeman does not believe she can do a better job than the ALJ did of outlining the favorable evidence." (*Id.* at 26 n.2.) This is the opposite of cherry-picking. And it is unclear how the ALJ failed to evaluate Dr. Szachnowski's opinion using the regulatory factors. As stated above, the regulatory factors to be considered are: the length, nature, and extent of the claimant and the source's treatment relationship; the degree to which the opinion is supported by the evidence; the opinion's consistency with the record as a whole; and whether the source is a specialist. *See* 20 C.F.R. § 404.1527(c). The ALJ included *all* of these factors in his opinion. (Tr. 28–29.) Bruggeman has not shown the ALJ erred in his assessment of Dr. Szachnowski's opinion.

2.4 Limitation to Sedentary Work

Bruggeman argues that the ALJ failed to support his RFC limitation of sedentary work. Interestingly, she acknowledges that the ALJ's RFC assessment was "clear and thorough." (Pl.'s Br. at 22.) Bruggeman argues remand is necessary, however, for two reasons. First, the ALJ did not properly address her symptoms of pain in accordance with the regulation. (*Id.* at 26.) Next, the ALJ failed to properly articulate why she was limited to sedentary work when the State Agency physicians opined she was limited to light work and Dr. Szachnowski opined she was unable to perform sedentary work (*id.* at 22, 26–27); Bruggeman argues that the ALJ effectively picked a position in the middle, impermissibly "playing doctor" (*id.* at 26–27).

As to Bruggeman's argument that the ALJ failed to comply with SSR 16-3p, this is inaccurate. In evaluating the intensity, persistence, and limiting effects of the alleged symptoms, the ALJ must base his analysis on the entire record and consider a variety of factors, including: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(3)). The ALJ clearly did this in his very thorough analysis. (Tr. 23–27.)

Further, the ALJ did not impermissibly "play doctor." To begin, the State Agency physicians did not limit Bruggeman to light work, as she states. At both the initial and reconsideration level, they limited her to sedentary work with stooping, kneeling, and

9

crouching restrictions due to her back and knee issues. (Tr. 87, 90, 101–03.) In according great weight to these physician's opinions, the ALJ adopted their limitations. However, in light of new evidence that the State Agency physicians did not have, the ALJ further limited Bruggeman's RFC to include never climbing ladders, ropes, or scaffolds, never kneeling or crawling, and allowing the use of an assistive device. (Tr. 28.) The ALJ makes clear in his opinion that these further limitations in the RFC came from the opinion of Dr. Szachnowski (Tr. 28–29), an opinion the State Agency physicians did not have at the time of rendering their opinions. Thus, in no way does the ALJ "play doctor" in further restricting Bruggeman's RFC from the limitations opined by the State Agency physicians. Rather, the ALJ specifically relies on a doctor—Bruggeman's doctor, in fact—in assigning these further restrictions. The ALJ's opinion is clear, thorough, and provides an adequate and logical bridge between the evidence and his conclusions. The ALJ did not err in his RFC assessment and remand is not required.

## CONCLUSION

Bruggeman argues that the ALJ erred in: (1) failing to adequately account for Bruggeman's non-severe impairment of depression; (2) failing to adequately consider Listing 1.02A; (3) failing to give appropriate weight to the opinion of her treating rheumatologist, Dr. Szachnowski; and (4) failing to adequately support his RFC finding of sedentary work. I find that the ALJ did not err and that the decision is supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 2nd day of January, 2020.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge